STATE on the relation of STEPHEN LASSITER and others *v.* JOHN R. PHILLIPS and others.

A defendant who offers himself as a witness in his own behalf, may be asked if he has not disposed of his property so as to avoid the pay- ment of any recovery in the action then being tried; and if since such disposal he has not been engaged in selling the same property, and his answers are proper subjects for comment before the jury.

It is also competent to ask such witness if he had not gone to New York to consult a fpiritualist in regard to the money, the subject of the present controversy.

(*Nichals* v. *Pool*, 2 Jones 23, cited and approved.)

CIVIL ACTION, on the official bond of the County Treasurer of LENOIR County, tried before *Russell, J.,* at the Spring Term, 1873, of the Superior Court of GREENE County to which Court it had been removed upon affidavit.

The following are the substantial facts as sent up with the record :

The only question was whether or not one W. H. N. Hun-

ter, Sheriff of said County of Lenoir, on the 3d day of July, 1871, paid over to said treasurer the sum of $3,050 of the funds of said county.

The plaintiffs, to prove that said money had been paid as alleged, introduced in evidence a receipt of said date and for said sums, purporting to be signed by said treasurer, and also a witness who swore that the said signature was in their opinion that of said treasurer.

Powell, the Treasurer, died some twenty days after the 3d of July, 1871. Defendants, to prove that the signature was not genuine, introduced one Cox who swore that he did not know the handwriting of Powell until he examined it after Powell's death and after this controversy began,—that he then looked at several signatures and writing which were shown to him as, and believed by him to be Powell's, that from this comparison he had formed his opinion; that his examinations were made with reference to this controversy. Court held that witness was not qualified to express an opinion as to the hand-writing. Defendant excepted.

Defendant Wadsworth was introduced and examined by defendant. On cross-examination plaintiff asked him if he has not disposed of his property so as to avoid a judgment in this action. To this question defendant objected. Court admitted the question, saying that it was a collateral impeaching question and that plaintiff would be concluded by the answer. Defendant's excepted.

Wadsworth in answer to the question said that he had recently sold most of his property; that he had sold his stock of goods to his brother-in-law and remained in possession thereof, selling as agent; that he sold out because trade was dull, but that he did not sell to avoid a judgment. In arguing to the jury the plaintiff's counsel criticised Wadsworth's statement, contending that it was false and using it to attack the witness and to impeach his testimony, when defendant's counsel interrupted, objecting to this argument on the ground that plaintiff was bound by the witness' reply. The Court allowed the

counsel to proceed with his argument. Defendants excepted

This witness, Wadsworth, was also asked by plaintiff on cross-examination, if he had not gone to New York and consulted a spiritualist to find out about the money. Question objected to by defendants on the ground that it was irrelevant and tended to ridicule the witness and prejudice the case with the jury. Objection overruled by the Court on the ground that it went to the credit of the witness and was therefore competent as a collateral impeaching question. Defendant's excepted.

On the trial it became material for the plaintiff in order to support a statement of one of his witnesses to show that a county order for payment of a pauper's coffin was considered and treated by the officials of Lenoir County as a " poor order," and that this was so in July, 1871. For this purpose plaintiff introduced a witness who said that he had been a member of the Board of Commissioners since September, 1872; that he did not know of his own knowledge what the custom was before that time, but that since he went in office the Board had made no change of the rules and customs existing before that time, and that so far as he knew, a coffin order was always looked upon and recognized and treated as a " poor order." This evidence was objected to by defendants but admitted by the Court. Defendants excepted.

The jury returned a verdict in favor of the plaintiffs. Judgment in accordance therewith ; from which judgment defendants appealed.'

*Smith & Strong,* for appellants.
*Faircloth & Granger,* contra.

PEARSON, C. J. 1. The ground taken in regard to a comparison of hand-writing was yielded on the argument.

2. The defendant Wadsworth, as we must infer, had impeached the genuineness of the receipt, and it was relevant to ask him if he had not conveyed away his property, for it

tended to show an apprehension on his part, that the receipt would be established.

3. The "white washing" given by Wadsworth to the fact that he had transferred most of his property, including his stock of goods, to his brother-in-law, "but had remained in possession, *selling as agent*," was a proper subject of comment to the jury.

The objection is, this being a collateral impeaching question, cannot be "pushed" any further than the answer which must be taken as conclusive—that is true, so far as *calling witnesses* to contradict, for it might lead to endless inquiries on a collateral matter. But we have never understood the rule to preclude comment upon the manner of the witness, as if he hesitates and evinces embarrassment, or upon the answer as, if it be inconsistent, and an attempt to gloss over a dishonest act.

4. We can see no objection to the question, "if the witness had not gone to New York and consulted a spiritualist, to find out about the money?" It tended to show that the witness had doubts about the genuineness of the receipt and was impressed with the necessity of invoking farther light upon the subject. So, it was not irrelevant; and although it might have had the effect of exposing the witness to ridicule, still, as he offered himself for a witness in his own behalf, it was well to let the jury be informed of all of the surroundings, so as to enable them to pass upon his credit.

5. In regard to the cost of the coffin for a pauper being a "poor order" (supposing it to have been a material subject of inquiry) it would seem, to be almost a self-evident proposition; and the statement of the witness, that "he had been a member of the Board of Commissioners since September, 1872; that when he came into office, it was the rule and custom of the Board to treat the cost of the coffin of a pauper as a poor order, and that this was deemed a matter of course, without any change in the rules," certainly did tend to show that such had been the rule in July, 1871. This presumption of the fixedness in the rules and customs of a Board of Commission-

ers, is wholly unlike the instance of tenancy at one date, not being evidence of tenancy at a prior date. So, *Nichols* v. *Pool*, 2 Jones 23, cited on the argument has no application.

No error.

PER CURIAM.                                    Judgment affirmed.